767 So.2d 766 (2000)
Jay P. WADE, et al., Plaintiffs-Appellees,
v.
AUTOLAND, INC., Defendant-Appellant.
No. 32,903-CA.
Court of Appeal of Louisiana, Second Circuit.
May 26, 2000.
Rehearing Denied June 15, 2000.
Writ Denied October 13, 2000.
*767 Neal L. Johnson, Jr., Monroe, John R. Joyce, New Orleans, Counsel for Appellants.
Anthony J. Bruscato, Juan A. Tramontana, Monroe, Counsel for Appellees, Jay P. Wade, III, Kristy Wade, Mary Taylor, Jewell Taylor.
Marshall L. Sanson, Monroe, Counsel for Appellee, Ricky Sewell.
Harry M. Moffett, IV, Monroe, Counsel for Appellee/Intervenor, State Farm Mutual Automobile Insurance Company.
Before WILLIAMS, CARAWAY and KOSTELKA, JJ.
WILLIAMS, Judge.
The defendants, Autoland, Inc., and American Equity Insurance Company ("American Equity"), appeal a judgment awarding damages to the plaintiffs, Jay P. Wade III, Kristy Wade and Mary Taylor on behalf of her minor daughter, Jewell Taylor. The trial court found that the automobile involved in the accident was owned by Autoland and was covered under its liability insurance policy. For the following reasons, we reverse and render.

FACTS
On June 7, 1996, Jay Wade was driving his pickup truck on Apple Street in Monroe, Louisiana. Wade's passengers were his daughter, Kristy Wade, and Jewell Taylor. At the intersection with First Street, Wade's vehicle was struck in the passenger side by a tan 1978 Chevrolet station wagon. The driver of the automobile failed to yield at a stop sign and then left the accident scene. Wade and his passengers later identified the driver of the other vehicle as Jason Weeks.
Monroe Police Officer Mark Kemp investigated the hit-and-run accident and issued a description of the other vehicle over the radio. While at the scene, Officer Kemp was notified that a station wagon had been located in the area and that it was on fire. Officer Kemp inspected the burning vehicle and determined from the damage that it had been involved in the accident. He also observed that a dealer license plate was attached to the car. During his investigation, Kemp was approached by Ricky Sewell. According to Officer Kemp, he was told by Sewell that *768 the vehicle was owned by Autoland, and that its employee, Dwight May, had allowed Sewell to test drive the automobile. Sewell also stated that at the time of the accident, the vehicle had been stolen from his place of business.
Following the accident, Kristy Wade and Jewell Taylor were treated at St. Francis Medical Center for back pain. Both women sought treatment with Dr. Douglas Cook, who recommended physical therapy. After participating in approximately two weeks of physical therapy, Kristy and Jewell were released without any limitations by Dr. Cook. The total medical expenses were $1,795 for Kristy and $1,861 for Jewell. Jay Wade did not seek medical treatment, but his truck was declared a total loss. The plaintiffs filed a petition for damages against the defendants, Autoland and its insurer, American Equity. A stipulation was filed into the record providing that State Farm Mutual Automobile Insurance Company had been subrogated to the rights of Jewell Taylor to the extent of $4,061.
At trial, testimony established that Autoland acquired the 1978 Chevrolet in July 1995. The parties dispute the ownership of the vehicle at the time of the accident. According to the defendants, Dwight May was a former salesman at Autoland who purchased the vehicle from the dealership in a credit sale on October 18, 1995. May signed a promissory note, the title and the bill of sale and took possession of the vehicle. On the following day, the sale was recorded in a used car ledger kept by the dealership as required by the state.
In contrast, the plaintiffs presented testimony indicating that Autoland owned the vehicle. Officer Kemp testified that he contacted Autoland and spoke with a woman who identified herself as the manager. When he described the station wagon and reported the license plate number to the manager, she stated that the dealership owned the vehicle and that the dealer license plate had been assigned to Autoland.
Subsequently, the trial court found that at the time of the accident, Autoland owned the station wagon, that May was an employee with access to the dealer plates, and that he had allowed Sewell to drive the vehicle in order to make a sale on Autoland's behalf. The court also found that Sewell had given Don Coleman permission to use the vehicle and that the accident occurred during his use. The court rendered judgment in favor of the plaintiffs, awarding property loss damages of $2,250 to Jay Wade, and personal injury damages of $5,295 to Kristy Wade and $5,361 to Jewell Taylor, subject to the subrogee rights of State Farm Mutual Automobile Insurance Company. The defendants appeal the judgment.

DISCUSSION
The defendants contend the trial court erred in finding that Autoland was the owner of the 1978 Chevrolet vehicle at the time of the accident. Defendants argue that May purchased the vehicle from Autoland in a credit sale prior to the accident.
A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price and the parties' consent are requirements for the perfection of a sale. LSA-C.C. art. 2439. Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid. LSA-C.C. art. 2456. However, a sale does not occur unless the parties intended that a price be paid. LSA-C.C. art. 2464.
A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder's resolution of conflicting evidence was reasonable in light of the record as a whole. Fowler v. WalMart *769 Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
Here, the defendants attempted to show that Autoland sold the 1978 vehicle to May by introducing into evidence the credit sale agreement and a photocopy of the title listing a transfer to Dwight May on October 18, 1995. Joe Kvaternik, a former sales manager at Autoland, testified that on this date he sold the 1978 Chevrolet station wagon to May for a price of $350, plus interest and fees, for a total price of $438.54.
John Ferracci, president of Autoland, testified that he was present and observed May sign the sale contract, title and promissory note. Ferracci stated that this was a credit sale and that May did not pay any money at the time. Although the financing agreement had been handmarked as "Paid," Ferracci could not produce any receipts for installment payments made by May. In their brief, defendants contend the documentary evidence is sufficient to establish that the parties agreed to a sale of the vehicle for a price. However, other evidence raised questions about the parties' intent to transfer ownership of the vehicle.
For example, the testimony indicated that Autoland did not follow its usual practice in this credit sale. Ferracci testified that when a vehicle sale is financed, the buyer pays the tax and registration fee amounts to Autoland, which would obtain the title transfer and place its lien on the title. Here, the bill of sale shows that May did not pay the registration fee, and there was no evidence that Autoland acted to transfer the title or file a lien, as was usual in a credit transaction.
In addition, Autoland failed to produce any documentation that it issued to May a 90-day temporary license plate, which allows a buyer time after the sale to obtain a new license plate and registration. Another factor weighing against a valid sale is the evidence that on the day of the accident, the vehicle displayed a dealer license plate with a dealer identification number, which had been assigned to Autoland. Neither Ferracci nor Kvaternik could explain why a dealer plate was still attached to the vehicle in June 1996 if May had actually purchased the automobile in October 1995.
The defendants argue that their failure to offer proof of May's installment payments or of the issuance of a temporary license plate, or to explain the presence of Autoland's dealer plates on the vehicle, are not relevant factors to the issue of ownership under state law. However, such evidence is relevant to the fact finder's determination of whether the parties achieved a genuine meeting of the minds that a price would be paid and ownership of the vehicle would be transferred.
The parties presented competing interpretations of the evidence. The trial court heard the conflicting testimony, weighed the credibility of the witnesses and considered the documentary evidence. Based upon this record, the trial court could reasonably have concluded that the parties failed to form an intent that May would actually pay a price in money for the vehicle. Consequently, we cannot say the trial court was clearly wrong in finding that Autoland retained ownership of the 1978 Chevrolet automobile despite the purported sale transaction. The assignment of error lacks merit.

Insurance Coverage
The defendants contend the trial court erred in finding that liability coverage was provided under the omnibus clause of the insurance policy issued by American Equity. Defendants argue that coverage was not available because Autoland had not given the non-owner driver permission to use the vehicle at the time of the accident.
The applicable provisions of American Equity's policy of automobile liability coverage provide in pertinent part:

*770 Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.
* * *
1. WHO IS AN INSURED
a. The following are "insureds" for covered "autos:"
(1) You for any covered "auto."
(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow....
This clause is typically referred to as an "omnibus clause." A claimant who seeks to establish coverage under the omnibus clause of an automobile liability policy must prove the vehicle was being used with the express or implied permission of the named insured. Perkins v. McDow, 615 So.2d 312 (La.1993).
The "initial permission" rule applies to persons using a vehicle with the named insured's permission. This rule provides that the operator, or first permittee, of a motor vehicle is covered by the omnibus clause so long as the operator is using the vehicle with the named insured's permission. Perkins, supra; Langston v. Shirley, 28,815 (La.App.2d Cir.10/30/96), 682 So.2d 1281, writ denied, 97-0008 (La.2/7/97), 688 So.2d 510. The party alleging coverage must establish the fact of initial use with permission by a preponderance of the evidence. Norton v. Lewis, 623 So.2d 874 (La.1993).
In the present case, Autoland's interrogatory responses indicated that May was an employee of FTL, the entity which hires Autoland personnel. Ferracci contradicted his own company's discovery responses, stating that May was not working at Autoland as a salesman at the time of the accident. However, Ferracci acknowledged that a company document filed with the Louisiana Secretary of State listed Dwight May as FTL's agent for receiving service of process.
Ferracci testified that May had worked as a licensed salesman for Autoland from approximately 1992 to 1994, when he moved to Atlanta. Ferracci stated that after returning from Atlanta in 1995, May worked at the dealership car lot and warehouse performing various jobs for the company's sole shareholder, Frank Feeback, who paid May compensation. Additionally, Kvaternik testified that May was "probably working part-time" for Autoland/FTL in June 1996. Both Ferracci and Kvaternik testified that Autoland dealer plates were issued only to licensed salesmen.
Based on the evidence presented, the trial court was not clearly wrong in finding that May was working in some capacity for Autoland on the date of the accident and that May was allowed to use the vehicle as his own with a dealer license plate assigned to Autoland. Thus, the record supports the conclusion that May was using the vehicle with at least the implied consent of Autoland, and was a permittee covered by the omnibus clause of the insurance policy.
This case also involved a "second permittee" scenario, where the first permittee allows another to drive the automobile. In this situation, the general rule applies that the party alleging coverage must prove that a non-owner user operated the vehicle with the named insured's permission. Langston, supra. Courts may infer the named insured's permission for the third party to drive the vehicle, depending on the facts and circumstances of the particular case. Langston, supra.
The question of implied permission is determined by whether it was reasonably foreseeable that the first permittee would allow someone else to drive the automobile. Perkins, supra. Where the first permittee is allowed to use the vehicle as his own, the possibility that the permittee might allow another to drive is reasonably foreseeable. Perkins, supra; Langston, supra. Coverage is not available where the third party uses the vehicle without the first permittee's express or *771 implied consent. See Francois v. Ybarzabal, 483 So.2d 602 (La.1986); Langston, supra.
Here, the testimony established that May allowed Ricky Sewell to use the vehicle for test driving purposes with the intent to sell him the automobile. In light of the fact that May was allowed to use the vehicle as his own and was working at Autoland, the possibility that May, as first permittee, might allow another to drive the automobile prior to a sale was reasonably foreseeable. Consequently, the circumstances support a finding that Sewell drove the vehicle with Autoland's implied permission and thus would have been covered under the omnibus clause. However, this determination does not end our inquiry, because the evidence indicates that Sewell was not driving when the accident occurred.
The trial court reasoned that because May allowed Sewell to drive the automobile, and Sewell in turn permitted Donald Coleman to use the vehicle, Coleman was covered under the insurance policy. However, regarding second permittees, permission to drive given to one person does not necessarily give that person authority to allow another to use the vehicle. Perkins, supra.
The record shows that May allowed Sewell to use the vehicle in anticipation of a sale, but the evidence presented fails to establish that May envisioned the possibility that Sewell would permit someone else to drive the automobile. Thus, the plaintiffs have failed to satisfy their burden of proving that Coleman was using the vehicle with the first permittee's express or implied consent. Nor do the cases cited by plaintiffs provide authority for finding that Coleman's use was reasonably foreseeable to Autoland given the factual situation involved in the present case.
Consequently, the named insured's permission cannot be inferred under these circumstances. Therefore, the trial court erred in concluding that Coleman's use of the automobile was covered under the omnibus clause of the insurance policy issued to Autoland. Accordingly, we must reverse the trial court's judgment against the insurer, American Equity.
In Louisiana, owners of motor vehicles are ordinarily not personally liable for damages which occur while another is operating the vehicle. Courts have recognized exceptions to this rule, including situations when the driver is an agent or employee of the owner, or when the owner negligently entrusts the vehicle to an incompetent driver. Mercadel v. Tran, 92-0798 (La.App. 4th Cir. 3/29/94), 635 So.2d 438. Based upon the evidence presented, neither of these exceptions are applicable in the present case.
Consequently, there is no basis for holding Autoland liable for any of the damages caused in the automobile accident. Thus, the trial court's judgment against Autoland must be reversed and the plaintiffs' claims are dismissed. In reaching this conclusion, we pretermit a discussion of the defendants' remaining assignment of error concerning the issue of damages.

CONCLUSION
For the foregoing reasons, the trial court's judgment is reversed. Judgment is hereby rendered in favor of the defendants, Autoland, Inc. and American Equity Insurance Company, and plaintiffs' claims are dismissed. Costs of this appeal are assessed to the appellees, Jay Wade, Kristy Wade, Mary Taylor on behalf of her minor daughter, Jewell Taylor, and State Farm Mutual Automobile Insurance Company.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS, and KOSTELKA, JJ.
Rehearing denied.