BROWN, Chief Judge.
11 Plaintiffs, Jason'Falcon and fiancée Tabitha Henderson, have appeáled from the trial court’s judgment rejecting their claim against defendant, Ink’s Firestone of Monroe.[1] For the reasons set forth below, we affirm.

*190
Facts/Procedurol History

On Friday, April 20, 2012, Jason Falcon, an automobile mechanic at Sparks Nissan, called local tire stores, looking for a tire for his 1997 Nissan pick-up truck. Falcon spoke with Emmett “Ink” Cobb, the owner/manager of Ink’s Firestone, who indicated that he had a tire in stock. However, once Falcon got to Ink’s Firestone, Cobb stated that he did not have a new tire in the size Falcon was looking for, but told Falcon that he was welcome to one of the used tires from the outside stacks if he could find the correct size.
Falcon found a tire, and Cobb offered to mount it for $8.00. Falcon declined, opting to mount and balance'the tire himself at Sparks Nissan. A couple of days later, while Falcon and Ms. Henderson were on the highway returning to' Monroe from a visit to family in Baton Rouge, the tread came off of the tire, which caused Falcon to lose control of and flip his truck. = Falcon was not injured but his truck was totaled, and Ms. Henderson suffered minor physical injuries. Plaintiffs filed the instant action against Ink’s Firestone, alleging that defendant was responsible for their damages caused by the accident because Ink’s Firestone supplied Falcon with a defective tire. In its answer, defendant admitted supplying a used tire to|¡>FaIcon, but urged that'the tire was not defective, or if it was, defendant was unaware of and not responsible for the defect.
After a bench trial on the merits, the trial court rendered judgment in favor of defendant. The trial court reasoned that the tire supplied by Ink’s Firestone, to Falcon could not have been defective because, if it had been, Falcon, a mechanic, would have noticed the defect. Therefore, since the tire did not have any obvious defects at the. time of its transfer to Falcon, defendant did not deliver an unsafe tire or fail to warn of possible defects in the tire.

Discussion

On appeal, plaintiffs urge that the trial court was manifestly erroneous when it found that: the tire provided to Falcon by Ink’s Firestone was not defective; Ink’s Firestone was not negligent in providing the tire to Falcon instead of disposing of it; the transfer of the tire from defendant to Falcon was not a sale and thus the Civil Code’s redhibition provisions were inapplicable; and, plaintiffs’ damages were not caused by defendant.

Trial Testimony

Plaintiff, Jason Falcon, testified that at the time of the accident, he was employed as an auto mechanic at Sparks Nissan in Monroe, Louisiana.[2] On April 20, 2012, Falcon called Ink’s Firestone looking for a tire for an older model Nissan truck he had recently purchased. “Ink” Cobb told Falcon that he had a tire in the correct size, but once Falcon got to the tire store, he learned that Cobb did not have a new tire. Falcon testified that RCobb told him that there might be a used tire out back that Falcon could have. The men went outside and found a tire.[3] Cobb told Falcon that he could have the tire but there was an $8.00 mounting fee. Falcon told Cobb he could mount, the tire at work instead, and Cobb told Falcon to tell Wil *191 liam Sparks, Falcon’s boss, that he “owed him one.” According to Falcon, it is “common knowledge” that Ink’s Firestone sells used tires; while Falcon worked at Sparks Nissan, the dealership would send customers who could not afford new tires to Ink’s Firestone for used ones.
Falcon took the tire to Sparks Nissan and put it on the passenger side rear of his truck.' Falcon and Ms. Henderson left for Baton Rouge that same day. ■ On their way back to Monroe a couple of days later, just before they reached Natchez, Falcon heard a thumping sound. The- pick-up veered to the right and Falcon overcorrected, which caused them to hit the median and- flip. According to Falcon, the truck landed upright on" its wheels.- The'responding police officer helped him remove the tire and put on the spare. Falcon and Ms. Henderson then drove to a nearby Walmart to get a new tire to put back on the truck before driving home to Monroe.
Falcon and plaintiffs’ counsel brought the tire to court and showed that it -no longer had any tread. . Falcon-stated that after the -truck flipped, although the tire still had air in -it, it was no longer safe because without the tread, it had no traction.
LFaleon testified that the truck, a 1997 Nissan XE hard body pick-up, was totaled because of extensive body damage. He didn’t have any injuries, but Ms. Henderson needed medical treatment.
On cross-examination, Falcon stated that before hé called Ink’s Firestone for a tire, he had called several other places, but because the tiré was an odd size, no one had a tire in stock. - When he called Ink’s, Cobb told Falcon that he had a tire, but the “story changed” once Falcon got to the tire store. Falcon told Cobb-that he really needed a tire and asked whether he had a used one. Falcon denied telling Cobb that he was looking for a tire to use as a spare, since the truck already had a donut spare. It was Cobb who pointed out the pile under the awning; they both walked over to the pile together, and Cobb pointed out the tire to Falcon, who grabbed it from the pile. Falcon put the tire in the back of his truck and took it back to Sparks Nissan.
Falcon' testified that he looked at the tire, but did hot inspect it, before he mounted it on the rim. Falcon related that he is not a tire expert; Cobb told him that the tire was fine, and Falcon took his word for it. Falcon testified tiiat he did not buy the tire, and he mounted it himself. Hé put a new valve stem on it before mounting it on his truck. Visually, the tire looked good. There were no visible signs of rot or anything else on the tire, which he noted had good tread depth.
Emmett Cobb stated that he has been the sole proprietor of Ink’s Firestone since 1993. Ink’s does not just sell tires; they also do body work and brakes, front end work, etc. However, Cobb was adamant that he only Rsells new tires. According to Cobb, he has never sold a used tire to a single customer. ,
Cobb examined the tire Falcon brought to court.[4] The first thing Cobb noticed was the age of the tire, which was indicated by “1702” stamped on the tire. This meant that the tire was manufactured in the 17th week of the year 2002. This tire would have been ten years old in December 2012. As to why the tread on this tire *192 had separated from its casing, Cobb opined that it was the age of . the tire, combined with air pressure, impact breaking and poor manufacturing.-
Cobb vehemently stated that he has never given' anyone a ten-year-old tire to put on a vehicle because a ten-year-old tire is unsafe. Cobb identified the two tire piles, one under a shed and one uncovered, behind Ink’s Firestone in a photograph introduced into evidence. Cobb testified that state law requires them to dispose of used tires. According to Cobb, the tires in the uncovered pile are put there by the mechanics as they take them off of cars they are putting new tires on. At the end of the day, the tires from the uncovered pile are moved to the covered pile because of state regulations. Cobb testified that there is not a “good” pile and a “bad” pile; there are simply two piles of tires that have been removed from customers’ cars and which are waiting to be picked up by the company contracted by the state.
|fiCobb testified that when Falcon called looking for a tire, which was a 215/60R14, Cobb probably told Falcon that he did not have a new tire in that size because it was no longer being manufactured, but he probably had one he could'sell him. Cobb added that this size tire was not the correct size for Falcon’s truck and should not have been on the vehicle to start with. When Falcon came to the tire store, Cobb was inside working near the tire machine. Falcon asked him for a used tire, and Cobb told him that they did not sell used tires, but he probably had a new one. Cobb went back to work, and Falcon was outside “fiddling around” in the pile “out there.” Falcon asked Cobb whether, if he found a tire, Cobb would give it to him. Cobb testified that he told Falcon to “help himself.”
According to Cobb, Falcon found a tire. Although he saw Falcon- with the tire, Cobb testified that he never .saw the tire up close, and he did not inspect or look at it before Falcon left with the tire. 'Cobb offered to mount the tire- for Falcon, who said that he would do it himself. That was the last he knew of the tire until he got a call from Falcon asking what Cobb was going to do about the tire [causing his wreck]. Cobb’s response was that he was not going to do a thing because he did not sell, inspect or mount the tire. He did not know the age of the tire when Falcon took it... Cobb opined that Falcon mounted and balanced the tire; he should have seen whether there was something wrong with the tire. Cobb testified that Falcon told him that he was.going to use this tire for a spare, not actually mount it on his truck.
| ■¡Analysis
Much discretion is left to the judge or jury regarding determinations of fact. Guillory v. Lee, 09-0075 (La.06/26/09), 16 So.3d 1104. A trial court’s factual findings will not be disturbed unless the record establishes that no reasonable, factual basis exists for the findings and that they are clearly wrong or manifestly erroneous. Daye v. General Motors Corp., 97-1653 (La.09/09/98), 720 So.2d 654; Rosell v. ESCO, 549 So.2d 840 (La.1989); Simmons, Morris & Carroll, LLC v. Capitol One, N.A., 49,005 (La.App.2d Cir.06/27/14), 144 So.3d 1207, writ denied, 14-1900 (La.11/14/14), 152 So.3d 886.
We will first address plaintiffs’ contention that the trial court erred in concluding that there was no sale between defendant and Jason Falcon.
A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price and the parties’ consent are requirements for the perfection of a sale. La. C.C. art. 2439; Wade v. Autoland, Inc., 32,903 (La.App.2d Cir.05/26/00), 767 So.2d 766, writ denied, 00-2180 (La.10/13/00), *193 771 So.2d 651. The price must be fixed by the parties in a sum either certain or determinable ... A sale does not occur unless the parties intended that a price be paid. La. C.C. art. 2464; Wade, supra. (Emphasis added).
A redhibition claim is between a seller and a purchaser. La. C.C. arts. 2520, 2521. Absent such a relationship, a redhibition action cannot be maintained. Sanders v. Earnest, 34,656 (La.App.2d Cir.07/24/01), 793 So.2d 393;. Connell v. Davis, 06-09 (La.App. 5th Cir.10/17/06), 940 So.2d 195, units denied, 06-2810, 06-2839 (La.01/26/07), 948 So.2d 175, 178.
The trial testimony is uncontrovert-ed that there was no sale. Both'Falcon and Cobb stated that Cobb gave the tire to Falcon, and that no price was ever dis..cussed much less agreed upon. Thus, the trial court did not err in finding that the parties’ transaction was not a . sale, but simply Falcon leaving the Ink’s Firestone premises with a tire Cobb had given to him. Louisiana’s redhibition provisions are inapplicable in this case inasmuch as there was no underlying sale.
Plaintiffs’ other assignments of error relate to the trial court’s rejection of their negligence claim against defendant. The trial court made several factual findings which led it to conclude that defendant was not liable for plaintiffs’ damages. These include that:
• Jason Falcon was a mechanic who had mounted over 100 tires in his life.
• The tire was in good shape at the time of its transfer from defendant to Falcon; it was not unsafe and it did not have any obvious defects at that time.
• Jason Falcon was in a good position to notice if the tire he obtained from defendant contained any obvious defects when he mounted it.
• Defendant did not fail to warn Jason Falcon of any possible defects in the used tire.
We will examine these findings in light of the applicable tort principles.
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315. Louisiana courts perform a duty/risk analysis to determine whether liability exists under the facts and circumstances of a particular case. Lawrence v. Sanders, 49,966 19(La.App.2d Cir.06/24/15), 169 So.3d 790, writ denied, 15-1450 (La.10/23/15), 179 So.3d 601; Finch v. HRI Lodging, Inc., 49,497 (La.App.2d Cir.11/19/14), 152 So.3d 1039.
Under this analysis, plaintiffs must prove five separate elements: (1) the defendant had a duty to conform'his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to an appropriate standard of care (the breach element); (3)the defendant’s substandard conduct was a cause-in-fact of the plaintiffs’ injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs’ injuries (the scope of liability or scope of protection element); and (5) actual damages (the damage element). Lawrence, supra. Failure to prove any of the elements of the duty/risk analysis results in a determination of no liability. M; Finch, supra.
Duty is defined as the obligation to conform to the standard of conduct associated with a reasonable' person in like circumstances. Cook v. Depingre, 49,527 (La.App.2d Cir.01/14/15), 161 So.3d 914; Montgomery v. Max Foote Construction Co., 621 So.2d 90 (La.App. 2d Cir.1993). In deciding whether to impose a duty in a particular case, the court must make a *194 policy decision in. light of the unique facts and circumstances presented. Lawrence, supra; Finch, supra.. The fact that a duty exists does not mean that it extends to protect everyone against every risk all of the time. Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La,1990); Montgomery, supra.
In the instant case, as found by the trial court, Falcon was an auto mechanic with significant experience in the mounting and balancing of tires. 11flAs such, he was aware of the potential danger in putting a previously owned tire (one which had been removed from one of defendant’s. customer’s vehicles presumably because of age and/or- wear and tear and which was in a pile outside of the shop awaiting pick up and disposition by a state contractor) on his truck and then driving that truck on an out-of-town trip without replacing the tire with a new one at the first opportunity he had to do so. While it was Falcon’s testimony that he told Cobb he was going to put the tire on his truck, Cobb testified that Falcon told him he was looking for a tire to use as a spare.. Regardless, there is no testimQny that Falcon told Cobb of his plans to. drive his truck to Baton Rouge and back. Likewise, the record shows that Falcon declined to have Cobb mount and balance the tire, for him, which would have given Cobb the chance to closely examine the tire and notice its manufacture date.[5] Instead, Falcon took the tire .from Cobb and opted to mount and balance the tire himself, and while, doing so, he found no obvious and apparent defects in the tire.
Given these facts, we consider, as did the trial court, Jason Falcon to be a, sophisticated , actor who made a conscious decision to travel out of town with a used tire mounted on the rear right side of his truck. As a mechanic with, experience mounting and balancing tires, Falcon was aware of the1 potential danger posed by choosing a used tire, even one without any obvious defects, rather than a new one. He was in a position to- determine the safety and practicality of this decision. Under these circumstances, 111 defendant did not have the duty to warn Falcon against the obvious dangers posed by the use''of a previously owned tire. Falcon made a reasoned choice where the risk was obvious to him, an experienced mechanic, and could have easily have been avoided. As the trial court found, defendant had no duty to specifically warn Falcon of the potential hazards posed by the used tire he was given by Cobb. See, Caserta v. Wal-Mart Stores, Inc., 12-0853 (La.06/22/12), 90 So.Sd 1042; Hines v. Remington Arms Cp., Inc., 94-0455 (La.12/08/94), 648 So.2d 331; Montgomery, supra; Sanders v. Posi-Seal International, 93-1007 (La.App. 1st Cir.04/08/94), 635 So.2d 760, writ denied, 96-0745 (La.05/10/96), 672 So.2d 924; Johnston v. Hartford Insurance Co., 623 So.2d 35 (La.App. 1st Cir.1993), writ denied, 626 So.2d 1170 (La.1993); Zellers v. National American Insurance Co., 514 So.2d 234 (La.App. 5th Cir.1987). Thus, the trial court’s determination that defendant is not liable to plaintiffs for their damages is neither manifestly erroneous nor clearly wrong.

Conclusion

For the reasons set forth above, the trial court’s judgment is AFFIRMED.

. In brief, defendant urges that its actual name is Ink’s Firestone of Concordia Street, Inc.

. A few weeks after the accident, plaintiffs relocated to Baton Rouge, Louisiana," and at the time of trial, Falcon was employed as a mechanic at Royal Nissan.

. Falcon stated that there were two piles of tires outside of Ink’s Firestone, one up against the building under an awning which Cobb called the "good pile” and another one out in the yard which was uncovered, which Falcon assumed contained the "bad” tires. The tire Falcon got was from the "good” pile up against the building.

. Falcon testified that when he went to Wal-mart in Natchez to purchase a new tire, he removed the used tire from its rim and put the tire in the back of his truck. The next day, Falcon brought the tire to his attorney’s office, where it remained-until trial. There was no evidence (other than Cobb’s self-serving testimony) to contradict Falcon’s testimony that the tire he presented in court was the one he obtained from Ink’s Firestone.

. In fact, when Cobb first saw the tire up close in the courtroom, he noticed the numbers "1702” which indicated its manufacturing date and stated that the tire was made in the 17th week of 2002, which made it old and unsafe.