531 So.2d 570 (1988)
Frances Baker NOEL, Appellee,
v.
Karen Noel LANDRY, et al., Appellants.
No. 19934-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
Rehearing Denied October 20, 1988.
*571 Ford E. Stinson, Jr., Bossier City, for appellants.
Booth, Lockard, Politz, LeSage & D'Anna by Bennett L. Politz, Shreveport, for appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
By an instrument executed in Florida, a father conveyed to his daughter immovable property in Louisiana, subject to a life estate in favor of the grantor's former wife. Later, the daughter, joined by her mother to convey the life estate, sold the property to a third party. Several years thereafter the mother filed this suit to recover all money her daughter had received in connection with the sale of the property, less any payments made to the mother, for damages for conversion, and for possession of certain movable property.
After a trial, the trial court ruled in favor of the mother, holding that the life estate was equivalent to a usufruct. Defendants appealed and plaintiff answered the appeal.
In 1971 James Noel conveyed to his daughter, Karen Landry, real estate in Natchitoches Parish for $10 and other valuable consideration, subject to a life estate to Frances Noel, from whom the grantor was divorced. Mrs. Noel, mother of Mrs. Landry, lived in the house on the property, and rented rooms to supplement her income (alimony from former husband).
After Mrs. Noel suffered a heart attack, on June 17, 1981 Mrs. Landry sold the property to the Maricellis. Mrs. Noel signed the instrument to convey her life estate. The sale price was $61,500, with a cash down payment of $15,000 and a promissory note (made payable to Mrs. Landry) for the balance of $46,500, payable in 360 monthly installments of $478.30 each.
After the property was sold, the mother moved to a government subsidized housing project in Shreveport. During the following years the daughter made monthly payments in varying amounts (ranging from $200 to $400 +) to her mother. After a family dispute, the daughter terminated these payments. Some 6 weeks later, this suit was filed on May 31, 1986.
Claiming that she had a usufruct on the Natchitoches Parish property which attached to the sale proceeds, the mother sought recovery of all the money her daughter received from the sale of the property, less amounts previously received from her daughter, damages for wrongful conversion, and possession of certain movable property together with $2600 in cash placed in savings by the daughter for her mother.
*572 The defendants denied plaintiff had a usufruct on the property; claimed that any cause of action for wrongful conversion had prescribed; and interposed the affirmative defense of laches.
At the trial, Mrs. Noel testified she believed the proceeds from the sale of the Natchitoches Parish property were to go for her benefit as long as she lived and that any monies not received on a monthly basis were to be placed in a savings account to which she would have access. Plaintiff further stated that her daughter, in addition to the monthly payments, paid for her health insurance and her car insurance.
On the other hand, the daughter contended that, by concurring in the sale of the property, the mother indicated an intention to release any rights she might have to the life estate or usufruct.
The purchaser of the property testified that, although he made the payments to the daughter, he understood the monies were going to be used to care for the mother as long as she lived. Consequently, he listed the mother as a named payee in the insurance policy he procured to cover the house. The realtor who handled the transaction also stated his understanding that the mother was to have use of the proceeds of the sale until her death.
The trial judge concluded that "life estate" in this deed created a usufruct. Therefore, he awarded plaintiff the $15,000 down payment and all interest paid on the credit portion of the sales price and all future interest to be paid, less credits for the amounts previously paid by the daughter to her mother, and the sums used to retire the first mortgage and to pay the realtor's commission. Defendants' plea of prescription was overruled, with the trial court reasoning that the daughter acted in such a way as to lead the mother to believe the monies derived from the sale were being used for her benefit or saved on her behalf. No award was made for damages for wrongful conversion nor did the trial court address the claim for movable property.
Defendants appealed, contending the trial court erred in:
1) Holding that the life estate granted to plaintiff was a usufruct, which attached to the sale proceeds.
2) Overruling the plea of prescription.
3) Not recognizing the defense of laches.
4) Rendering a money judgment against defendants without first ordering them to render a full accounting of all funds received and disbursed.
5) Not requiring plaintiff to give security and invest the proceeds from the sale as provided by law.
Plaintiff answered the appeal, requesting general damages for the wrongful conversion of her property and to be recognized as the owner of certain movable property.[*]
Is a "life estate" equivalent to a "usufruct"?
Defendants argue that the common law "life estate" is not the same as our "usufruct". Further, they contend that plaintiff failed to present any evidence at trial to explain the meaning of "life estate".
Every court of this state shall take judicial notice of the common law and may inform itself of such laws in any manner it may deem proper. La.C.C.P. Article 1391; Shaw v. Ferguson, 437 So.2d 319 (La.App. 2d Cir.1983).
"Life estate" is defined in 31 C.J.S., Life Estates, § 30, as a freehold interest in lands, the duration of which is confined to the life or lives of some particular person or persons or to the happening or non-occurrence of some uncertain event. A life estate terminates upon the death of the life tenant unless other provisions are made.
Black's Law Dictionary, 5th Edition (1979), defines "life estate" as:
"An estate whose duration is limited to the life of the party holding it, or to some other person.
A legal arrangement whereby the beneficiary (i.e. the life tenant) is entitled to *573 the income from the property for his or her life. Upon the death of the life tenant, the property will go to the holder of the remainder interest or to the grantor by reversion."
A usufruct is a real right of limited duration on the property of another. The features of the right vary with the nature of the things subject to it as consumables or nonconsumables. La.C.C. Article 535.
To confer a usufruct, what is required is the manifestation of the grantor to confer less than full ownership. Succession of Goode, 425 So.2d 673 (La.1982). In Succession of Moran, 479 So.2d 350 (La.1985), the court found that the lack of reference to the terms "use" or "use and benefit" or "enjoyment" of the property was not fatal to the validity of the conveyance.
In this case it is obvious that the daughter received the naked ownership of the Natchitoches Parish property subject to the use of the mother, who actually enjoyed that use until the sale of the property. Consequently, the trial judge did not err in finding the "life estate" to be the equivalent of "usufruct". The two older cases cited by defendants, dealing with prohibited substitutions, are inapposite.
Was it proper to award the proceeds of the sale of property subject to the usufruct to the usufructuary?
La.C.C. Article 616 provides:
When property subject to usufruct is sold, whether in an action for partition or by agreement between the usufructuary and the naked owner, the usufruct attaches to the proceeds of the sale unless the parties provide otherwise.
Defendants claim that the parties agreed the daughter would receive all proceeds of the sale, pointing out that the promissory note was made to her alone and that she did receive all payments. On the other hand, plaintiff argues that she understood the proceeds were to be partially given to her on a monthly basis, with the balance being escrowed for her use and benefit in a savings account or certificates of deposit. The trial judge agreed with plaintiff's version.
We cannot say that the trial judge was clearly wrong. Both the purchaser of the property and the realtor supported the testimony of plaintiff on this issue. Further, it was established that as soon as the mother moved into an apartment the daughter began giving her regular monthly amounts. When the mother complained about her large monthly drug bill, the daughter increased the monthly payments to $350. The daughter paid her mother's health insurance on a monthly basis and the car insurance twice a year.
In substance, there was ample evidence to support the trial judge's conclusion that the parties "did not provide otherwise" under La.C.C. Article 616. Therefore, the usufruct attached to the proceeds of this sale.
Did the action in tort for wrongful conversion prescribe?
The sale of this property occurred on June 17, 1981 and this lawsuit was filed on May 13, 1986. Since more than one year had elapsed, defendants claim the action had prescribed.
The key to any claim of prescription is the time when the tolling of the prescriptive period begins. Here, the mother received monthly benefits until about six weeks prior to the filing of the suit. Her health insurance and car insurance were paid from what she believed to be the proceeds of the sale. Until the payments were terminated following a family dispute, the mother was not aware of her daughter's claim to all the proceeds as owner. She was then put on notice of this claim.
We have held that the one year prescriptive period for tort cases does not run against one who is ignorant of the existence of facts which would entitle him to bring suit. Rosenzweig v. Alexandria Seed Co., Inc., 426 So.2d 380 (La.App.2d Cir.1983). Constructive knowledge of a tort sufficient to commence the running of prescription is more than a mere apprehension that something might be wrong. Griffin v. Kinberger, 507 So.2d 821 (La.1987).
The trial judge did not err in overruling the plea of prescription.
*574 Should the trial court have sustained the defense of laches?
Laches is an equitable defense which requires the party pleading it to prove 1) unreasonable delay on the part of the one filing suit and 2) harm that would be suffered by the defendant or a third party since the defendant or a third party has relied on the reasonable assumption, occasioned by the delay, that the plaintiff would not seek further legal redress. Confederate Welding v. Bank of the Mid-South, 458 So.2d 1370 (La.App.2d Cir.1984).
Although the trial court did not specifically address this defense, the first element set forth above fails with the trial judge's determination that plaintiff did not receive notice of the conversion until termination of the monthly payments in April 1986. Further, no evidence was presented to show that defendants suffered harm because they reasonably believed plaintiff would not file her suit until an unreasonable delay had elapsed.
Had there been a sufficient accounting of the funds received in the sale of the property to allow the trial court to render a money judgment in favor of plaintiff?
The daughter claims she made cash payments to her mother that could be proved by budget materials she maintained but did not have with her in court for trial. Therefore, she contends the trial court should have allowed her additional time to render a complete accounting before rendition of a money judgment.
We do not agree. If the records existed and claims were being made for credits for payments made either to or on behalf of the mother, that evidence should have been presented at the trial. To allow a second hearing for this purpose would not be in the interest of judicial economy. Consequently, this claim lacks merit.
Should the trial court have ordered the usufructuary to give security and invest the proceeds?
Defendants cite La.C.C. Articles 571-575 for the proposition that a usufructuary is required to give security for the property subject to the usufruct. The judgment in this case awards the property subject to the usufruct, the principal amounts paid monthly on the promissory note, to the daughter, with the mother only receiving the interest on that note. Interest on property subject to usufruct is a civil fruit, which the usufructuary may consume as owner. La.C.C. Articles 550, 551 and 556.
For this reason, defendants are not entitled to security.
Should the trial court have awarded plaintiff general damages for wrongful conversion?
The measure of damages for wrongful conversion is the return of the property, or if it cannot be returned, the value of the property at the time of conversion. Holley v. Singletary, 464 So.2d 410 (La.App. 1st Cir.1985). General damages may also be awarded when appropriate. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985).
We cannot say that the trial judge abused his discretion in failing to award general damages in this case.
Should the trial court have awarded items of movable property to plaintiff?
The movable property claimed by plaintiff consisted primarily of household goods and family heirlooms allegedly placed with the daughter merely for safekeeping. The trial court did not address this issue, apparently concluding the mother did not prove her ownership of the disputed property.
The daughter conceded that she had in her possession the following items belonging to her mother: two sets of silver plate, some items in a National Silver Company chest, and an opal ring. Plaintiff is entitled to possession of these. She did not prove ownership of the other contested items.
Conclusion
For the reasons set forth, the judgment of the trial court is amended to recognize plaintiff as the owner of and entitled to possession of the following movable property in the possession of her daughter, Mrs. Landry: two sets of silver plate, some *575 items in a National Silver company chest, and an opal ring; as amended, the judgment is AFFIRMED, at the cost of defendants-appellants.

ON APPLICATION FOR REHEARING
Before HALL, FRED W. JONES, SEXTON, JASPER E. JONES and NORRIS.
Rehearing denied.
NOTES
[*] Plaintiff did not complain that the judgment only recognized her right to interest paid on the promissory note, rather than principal also. Therefore, we do not discuss this.