WILLIAMS, J.
The plaintiff, Gary Fenner, appeals a judgment that awarded him $3,500 in damages and denied his claim for attorney fees and expert witness fees. For the following reasons, we affirm the trial court's determination that the defendant was liable to the plaintiff for conversion; we affirm the court's conclusion that the plaintiff is not entitled to attorney fees and expert witness fees; we vacate the trial court's award of damages; and we remand with instructions.
FACTS
On February 29, 2016, the plaintiff, Gary Fenner, and the defendant, Kyndal Schley, entered into a Real Estate Buy/Sell Agreement whereby the plaintiff agreed to sell the defendant a parcel of immovable property in Belcher, Louisiana. The agreement provided that the "[p]roperty being purchased includes all land, all buildings, component parts and permanently installed improvements thereon, including fencing, unless otherwise stated[.]" The buy/sell agreement also contained a provision for reasonable attorney fees and expert witness fees "[i]in the event of non-performance by either Party[.]"
The property did not include a residence. However, it contained a barn and a shed which were included in the appraisal and purchase price of the property. Further, a custom-made 1,000-gallon fuel tank had been placed on the property. The fuel tank was on "skidders" to allow it to be moved from one location to another, was secured by metal stakes that had been inserted into the ground, and it contained an electrical wire that was connected to an electrical junction box attached to a "chicken coop." The plaintiff had purchased the fuel tank in 2009 for $14,486.53.
On the day of the closing, the plaintiff informed the defendant that he had not removed all of his belongings from the property and that he would "need a few days" to retrieve them. The defendant agreed to allow the plaintiff time to remove his items. Two days later, the defendant went to the property and noticed that the shed, which was included in the purchase, had been removed. However, the fuel tank and multiple other items (including two dogs and "stuff" in the barn) remained *772 on the property. After consulting with her realtor, the defendant demanded that the plaintiff either return the shed or pay her its replacement value. The plaintiff returned the shed and continued removing his belongings from the property. Subsequently, when the plaintiff went to the property to retrieve the fuel tank, a lock had been placed on the gate and he was unable to enter the property. Initially, the defendant testified that she believed the tank was included in the purchase of the property and that it belonged to her. She later stated that she decided to keep the fuel tank because the plaintiff "was dragging his feet on returning [the shed]." The plaintiff's attempts to regain possession of the fuel tank were unsuccessful.
Thereafter, Josh Schley, the defendant's husband, listed the fuel tank for sale on Craigslist for $1,000. Schley testified that he determined the value of the fuel tank by "research[ing] the value of similar products ... on the Internet through Google and other search engines for similar products." He stated that he decided to lower the price and sold the tank to an acquaintance for $800.
On July 5, 2016, the plaintiff filed a lawsuit for "Damages Based Upon Conversion." The plaintiff alleged that the fuel tank was not included in the real estate transaction and that the defendant had "converted, misappropriated, and refused to allow [him] to take possession of his property." Further, the plaintiff alleged that he was entitled to attorney fees in accordance with the buy/sell agreement.
At trial, several witnesses testified. However, only the fuel tank's manufacturer, Kenneth Hudson, of Kenny Hudson Construction, LLC, testified with regard to its value. Hudson, who was accepted by the trial court as an expert in construction, testified as follows: he owns and operates a construction company; he manufactured, constructed and delivered the fuel tank to the plaintiff in 2009; manufacturing fuel tanks is not a task he performs in his normal course of business; the fuel tank was a "custom" tank that he constructed from steel at the plaintiff's request; the tank was "an oilfield service tank" and was "built with a lot heavier material" than regular tanks; the tank was placed on two I-beam skids to allow it to be moved with a truck or tractor; the tank was not meant to be mounted to the ground; the total invoice price of the tank was $14,486.53; the cost of the materials used to manufacture the tank was $7,286.53, the cost of labor was $6,800, and the delivery charge was $400; due to rising costs in the industry, it would cost more than $14,000 to manufacture a similar tank in today's market; and $10,000 would be a reasonable price to pay for a used eight-year-old custom-made fuel tank.
On cross-examination, Hudson testified that it took approximately two months to construct the fuel tank. When he delivered the tank, he gave the plaintiff an invoice, and the plaintiff paid him with a check. During Hudson's direct testimony, the plaintiff had introduced an invoice from Kenny Hudson Construction, LLC, which indicated that the fuel tank had been purchased for $14,486.53. Thereafter, counsel for the defendant asked Hudson how he could have given the invoice to the plaintiff in 2009, when Kenny Hudson Construction, LLC, was not organized as a business entity until 2012. Hudson explained that he had been operating the construction company and performing jobs long before he formally received a tax identification number and filed the documents to form the limited liability company. He admitted that he was operating the company and issuing invoices in the name of "Kenny Hudson Construction, LLC" before he filed for limited liability status with the State of Texas. Hudson also testified that when he constructed *773 the plaintiff's fuel tank, he was employed at a plant and was performing construction jobs "on the side." He reiterated that he was completing jobs and issuing invoices, despite not being "filed with the state."
At the conclusion of the trial, the trial court found that the fuel tank was a movable and was neither a component part nor a permanently installed improvement on the property. The court determined that the defendant was liable to the plaintiff for conversion and entered judgment in favor of the plaintiff in the amount of $3,500, "with interest from date of judicial demand and all costs of these proceedings." The court denied the plaintiff's request for attorney fees, finding that the provision for attorney fees in the contract "is inapplicable as said provision applies to the sale of the property, not the issue at hand[.]"
The plaintiff appeals.[1]
DISCUSSION
The plaintiff contends the trial court erred in awarding $3,500 in damages. He argues that the evidence unequivocally established that he paid $14,486.53 for the fuel tank and the current value of the tank exceeds $10,000.
The measure of damages for wrongful conversion is the return of the property, or if it cannot be returned, the value of the property at the time of conversion. Dual Drilling Co. v. Mills Equip. Invs., Inc. , 1998-0343 (La. 12/1/98), 721 So.2d 853 ; Noel v. Landry , 531 So.2d 570 (La. App. 2 Cir. 1988), writ denied , 535 So.2d 746 (La. 1989). General damages may also be awarded when appropriate. Quealy v. Paine, Webber, Jackson & Curtis, Inc. , 475 So.2d 756 (La. 1985) ; Noel v. Landry , supra .
In the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1 ; Martinez Mgmt., Inc. v. Caston , 39,500 (La. App. 2 Cir. 4/13/05), 900 So.2d 301. As in cases of contract, if the damages are susceptible of precise measurement, the court's discretion is circumscribed and damages will be measured by the loss sustained. La. C.C. arts. 1999, 1995 ; Martinez Mgmt., Inc. , supra ; National Union Fire Ins. Co. of Pennsylvania v. Spillars , 552 So.2d 627 (La. App. 2 Cir. 1989), writs denied , 556 So. 2d 61 (La. 1990).
In the instant case, the amount of damages was established by direct testimony. The plaintiff and Hudson provided uncontroverted testimony that the plaintiff paid $14,486.53 for the custom-made fuel tank in 2009. Hudson testified that the cost of replacing the tank in today's market would exceed $14,000. He further testified that the value of an eight-year-old used fuel tank of the same type and quality would exceed $10,000.
The defendant did not submit any evidence to contradict Hudson's testimony with regard to the value of the fuel tank. Rather, the defendant introduced into evidence a copy of Hudson Construction's business organization filing with the Office of the Secretary of State for the State of Texas. The document established that Hudson filed for a Certificate of Formation of a Limited Liability Company and registered his construction company on March 16, 2012. Hudson admitted that he did not register his company until 2012. However, he testified, without any evidence to the contrary from the defense, that he began *774 operating his construction company under the name "Kenny Hudson Construction, LLC," long before he filed his documents with the secretary of state. We find that the date of Hudson's filing with the secretary of state has no bearing on the value of the fuel tank converted by the defendant.
As stated above, Hudson provided uncontroverted testimony that he manufactured the custom-made fuel tank and the cost of doing so in today's market would exceed the cost the plaintiff paid in 2009. Hudson also testified that the value of an eight-year-old fuel tank, made of the same material and quality as the tank converted by the defendant, would exceed $10,000. However, the trial court awarded the plaintiff $3,500 for the fuel tank without providing a basis for doing so. Consequently, we vacate the award of damages in the amount of $3,500, and we remand this matter to the trial court with instructions to provide some articulable basis for the award of damages or to revalue the fuel tank.
The plaintiff also contends the trial court erred in failing to award attorney fees. He argues that the buy/sell agreement contained a provision for the award of attorney fees "[i]in the event of non-performance by either Party[.]" In response, the defendant argues that she is not liable for attorney and expert witness fees because she did not breach the buy/sell agreement. Louisiana courts have long held that attorney fees are not allowed except where authorized by statute or contract. Stutts v. Melton , 2013-0557 (La. 10/15/13), 130 So.3d 808 ; Sher v. Lafayette Ins. Co. , 2007-2441 (La. 4/8/08), 988 So.2d 186 ; Rivet v. State, Dept. of Transp. & Dev. , 1996-0145 (La. 9/5/96), 680 So.2d 1154 ; State, Dept. of Transp. & Dev. v. Williamson , 597 So.2d 439 (La. 1992). An award of attorney fees is, in essence, a type of penalty. Sharbono v. Steve Lang & Son Loggers , 1997-0110 (La. 7/1/97), 696 So.2d 1382 ; Benton v. Clay , 48,245 (La. App. 2 Cir. 8/7/13), 123 So.3d 212. They are not awarded to make the injured party whole, but rather to discourage a particular activity or activities on the part of the other party. Id.; Langley v. Petro Star Corp. of La. , 2001-0198 (La. 6/29/01), 792 So.2d 721.
In the instant case, the buy/sell agreement provided in pertinent part:
Property being purchased includes land, all buildings, component parts and permanently installed improvements thereon, including fencing, unless otherwise stated therein[.]
* * *
BREACH. In the event of non-performance by either Party, the other Party shall have the right to specific performance and/or damages and reasonable attorney fees, including the reasonable charges of an expert.
* * *
In short, by virtue of the buy/sell agreement, the plaintiff agreed to sell the property and the defendant agreed to buy it for a specified price. The buy/sell agreement did not contain any provision with regard to allowing the plaintiff additional time to retrieve his movable property. After the buy/sell agreement was executed, the parties entered into a verbal agreement that allowed the plaintiff additional time to remove his movables from the property. The defendant breached the parties' subsequent verbal agreement by refusing to allow the plaintiff to remove his items.
Additionally, the instant cause of action did not arise from a contract dispute. The plaintiff filed an action in tort (conversion). There is no statutory provision that mandates the recovery of attorney fees for a tort lawsuit for conversion. Consequently, *775 we find that the trial court did not err in failing to award attorney fees and expert witness fees. This assignment lacks merit.
CONCLUSION
For the reasons set forth herein, we affirm the trial court's determination that the defendant is liable to the plaintiff for conversion; we affirm the denial of the plaintiff's demand for attorney fees and expert witness fees; we vacate the award of damages; and we remand this matter to the trial court with instructions to provide some articulable basis for the award of damages or to revalue the fuel tank. Costs of the proceedings in the district court and this appeal are assessed to the defendant, Kyndal Kay Schley.
AFFIRMED IN PART; VACATED IN PART; REMANDED WITH INSTRUCTIONS.

The defendant did not appeal the trial court's determination on the issue of liability. Therefore, that determination is final.