Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,771-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JAN TAYLOR AND JESSICA                     Plaintiffs-Appellants
TRANETTE TAYLOR

versus

ORR MOTORS OF SHREVEPORT,                  Defendant-Appellant
INC. D/B/A ORR NISSAN

* * * * *

Appealed from the
Shreveport City Court for the
Parish of Caddo, Louisiana
Trial Court No. 2018R08747

Honorable Sheva Meshawn Sims, Judge

* * * * *

LUNN IRION LAW FIRM, LLC              Counsel for Defendant
By: Gerald Martin Johnson, Jr.        Appellant,
    James Alex Mijalis                Patterson Motors of
                                      Shreveport, Inc. D/B/A
                                      Orr Nissan

BODENHEIMER, JONES, AND               Counsel for Plaintiffs
SZWAK, LLC                            Appellants,
By: David Anthony Szwak               Jan Taylor and Jessica
                                      Tranette Taylor

CARMOUCHE, BOKENFOHR,
BUCKLE & DAY
By: Amy Gardner Day

* * * * *

Before STONE, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Plaintiffs, Jan Taylor and her daughter, Jessica Tranette Taylor ("Taylor") (collectively, "Plaintiffs" or "the Taylors"), filed suit in Shreveport City Court against Defendant, Patterson Motors of Shreveport, Inc. d/b/a Orr Nissan ("Defendant" or "Orr Nissan"), on October 26, 2018, for claims including, but not limited to, redhibition, conversion, and violation of the Louisiana Unfair Trade Practices Act ("LUTPA"). A bench trial was held on May 22, 2023. The court took the matter under advisement and post-trial briefs were submitted by the parties pursuant to the court's request. The court issued a judgment on the merits in favor of Plaintiffs on June 2, 2023, and a revised judgment was entered on June 12, 2023. Additional post-trial briefs were submitted on the issues of quantum. On August 14, 2023, the trial court issued a final judgment granting six itemized damage awards in favor of the Taylors, a total principal sum of $24,192.91, together with judicial interest from judicial demand until paid in full. Orr Nissan appeals. The Taylors filed a devolutive cross-appeal on the issue of attorney fees; however, the issue was abandoned in their brief.

For the following reasons, we AFFIRM IN PART AND REVERSE IN PART the trial court's judgment on the merits and AMEND the judgment on damages.

## FACTS AND PROCEDURAL HISTORY

On May 21, 2018, the Taylors went to Orr Nissan to purchase a vehicle for use by Taylor. Taylor originally picked out a vehicle that she decided not to purchase after it seemed to have some mechanical issues

during the test drive. She ultimately selected a 2012 Chevrolet Cruze. According to Taylor's testimony, Logan Whitehead ("Whitehead"), the salesperson, stated that the Cruze was a "good car" and "better than the other one … because it was fully loaded." The Taylors agreed to a purchase price of approximately $12,000.00 plus taxes, fees, and other costs. They traded in a 1995 Nissan Maxima for a $500.00 credit toward the purchase price and made a $2,000.00 cash down payment. The balance to be financed was $14,429.01, at an annual percentage rate of 19.95%, and the lender was identified as Regional Acceptance Corp. The Taylors executed several documents in connection with the purchase and financing, including a retail installment contract, a retail buyers order and addendum, buyers guide, delivery agreement, as-is agreement, and returned vehicle policy.

Three to four days after leaving the dealership, the vehicle began exhibiting mechanical issues while Taylor was traveling to Pineville to attend classes for her master's degree program. Taylor notified Whitehead of the problems with the vehicle and she was instructed by Whitehead to deliver the vehicle for inspection and repairs. According to Taylor's testimony, she brought the vehicle to Orr Nissan's service department and, after waiting for repairs, was informed that the repairs were not covered by warranty. Taylor insisted that the vehicle be repaired since it began to experience mechanical issues only a few days after it left the dealership. After she waited for several hours, Chris Curley, Orr Nissan's finance manager, advised Taylor that the credit agreement had been rejected by Regional Acceptance Corp. and, as a result, Orr Nissan would not be proceeding with the sale and Taylor would be required to relinquish

2

possession of the Cruze. Taylor then requested the return of her Nissan Maxima she had traded in and the $2,000 deposit. However, Orr Nissan informed Taylor that they could not return the trade-in vehicle because it had already been sold at auction for scrap. Instead, Taylor was given a check in the amount of $1,144.00, which represented the return of the $2,000 down payment, plus $500 for the value of the trade in vehicle, less a $750 restocking fee, and less a mileage fee of $606 for the 606 miles placed on the car during Taylor's possession. Taylor was required to remove all her belongings from the vehicle and place them in trash bags while being supervised by an employee, then she was escorted from the building to the parking lot until someone could pick her up. According to Taylor's testimony, she had to miss classes due to not having a vehicle and had to work with her program director to make up work. Taylor further testified that her credit was negatively impacted, and she was humiliated by the experience of being escorted from the dealership with a trash bag of belongings in front of people she knew.

The Taylors made demand upon Orr Nissan to honor the sale agreement and return the new vehicle or completely rescind the sale based on redhibition, or in the alternative, for a reduction of the price. Orr Nissan did not comply with the Taylors' demands and this suit followed.

## DISCUSSION

*Redhibition – Completed Sale*

The trial court held in its June 12, 2023, judgment on the merits that there was a completed sale of the Cruze, and it was sold with redhibitory defects. Damages were awarded in accordance with that finding in the

3

August 14, 2023, judgment. There does not appear to be any dispute in the record as to the existence of the defects, that the defects existed at the time the transaction was made, and that the Taylors would not have purchased the vehicle had they known of the defects. Orr Nissan asserts that the redhibition claim is without merit because there was no completed sale. It claims that the vehicle transaction was in contemplation of a sale pending approval of financing, and that the sale was never consummated because financing, a material term of the sale, was not approved and the purchase price was not paid.

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice. La. C.C. art. 2520; *Wilson v. GEICO Cas. Co.*, 54,551 (La. App. 2 Cir. 6/29/22), 343 So. 3d 308. The buyer must prove that the vice existed before the sale was made; however, if the vice appears within three days immediately following the sale, it is presumed to have existed before the sale. La. C.C. art. 2530; *Wilson*, *supra*. In addition, a sale must have occurred for a party to maintain a redhibition claim. *Falcon v. Ink's Firestone of Monroe*, 50,332 (La. App. 2 Cir. 1/13/16), 186 So. 3d 188. Absent a seller-purchaser relationship, a redhibition action cannot be maintained. *Id.*

Orr Nissan claims that the transaction with the Taylors for acquisition of the Cruze was a "contract to sell" rather than a "sale." La. C.C. art. 2623 provides that a "contract to sell" is:

> An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of

4

a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell.

It claims that the above provision is distinguishable from that of La. C.C. art. 2439 that sets forth the elements of a "contract of sale":

Sale is a contract whereby a person transfers ownership of a thing to another for a price in money.

The thing, the price, and the consent of the parties are requirements for the perfection of a sale.

In support of its argument, Orr Nissan references conditional language used throughout the documents executed by the Taylors. The buyers order states in bold that, "This order shall not become binding until accepted by Dealer or his authorized representative by a bank or finance company willing to purchase a retail installment contract between the parties hereto based on such terms." The delivery agreement provides that the vehicle purchase "is conditioned upon obtaining approval of [buyers'] credit application" and that "in the event that [buyers'] credit application and/or finance terms are refused," then the buyers would have to immediately return the vehicle, and Orr Nissan would return the trade -in and down payment and cancel the buyers order and retail installment. In addition, the returned vehicle policy states that, "if a vehicle is returned due to customer failing to receive funding to purchase the vehicle … the customer must pay a $750 restocking fee at the time the vehicle is returned … [and] must pay a mileage fee of one dollar ($1.00) for each mile driven, based upon the mileage reported on the odometer statement at the time of delivery."

Orr Nissan claims that these documents make it clear that the transaction with the Taylors to acquire the vehicle was a "contract to sell" contingent on the Taylors either paying the price of the vehicle or obtaining

5

financing to fund the purchase. Neither occurred because the only consideration paid was the cash down payment and trade-in vehicle, which were refunded less the restocking fee. As such, the buyers order did not become a binding contract enforceable by either party because the Taylors' credit application was rejected.

The Taylors assert that a contract of sale is perfected when one party consents to give a certain thing for a price in money and the other consents to give the price in order to have that thing. *Benglis Sash & Door Co. v. Leonards*, 387 So. 2d 1171 (La. 1980); *MK Int'l, Inc. v. Central Oil & Supply Corp.*, 46,925 (La. App. 2 Cir. 2/29/12), 87 So. 3d 165. They argue that the sale of the Cruze was perfected on May 21, 2018, because Orr Nissan agreed to give the vehicle for an agreed-upon price and the Taylors agreed to pay that price. The down payment was made, including the trade-in, and Taylor was informed that she had been approved for financing of the balance owed, with Regional Acceptance Corp. listed as the lender. Taylor took possession of the Cruze and Orr Nissan took possession of the trade-in vehicle. When the Cruze began experiencing mechanical problems, Taylor was advised to bring in the vehicle for repair. It was not until after she had been waiting on repairs for hours and was told the vehicle wasn't covered by warranty, that Orr Nissan informed Taylor her financing had not been approved and, as a result, they were cancelling the contract.

It is clear from the record that the transaction between Orr Nissan and the Taylors was a "contract to sell," i.e., a conditional sale, which was contingent upon the Taylors obtaining financing for the balance of the purchase price. There are multiple references throughout the purchase

6

documents that the buyers order and retail installment contract are not binding until the buyer is able to secure financing. While the delivery agreement does specify that the purchase of the Cruze is conditioned upon obtaining approval of the Taylors' credit application, it also provides that condition fails and agreement is cancelled if the "credit application and/or finance terms are refused by the *finance sources* of Orr Nissan [or the Taylors are] unable to secure approved financing *within 25 days of the date of this agreement from [their] own sources.*" (*Emphasis added.*) The above language indicates that both the buyer and seller have obligations in connection to satisfying the financing condition.

> La. C.C. art. 1772 provides:
>
> A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to fulfillment.

La. C.C. art. 1772, Revision Comments-1984 (a), provides further insight:

> This Article … changed the law insofar as it expands the principle of the source Article in order to make it encompass the fault of either party rather than the fault of the obligor alone.

In *McClellan v. Premier Nissan, L.L.C.*, 19-289 (La. App. 5 Cir. 2/26/20), 293 So. 3d 648, the Fifth Circuit held that summary judgment was precluded for the automobile dealer in a breach of contract action filed by the buyer. There were genuine issues of material fact as to which party was responsible for the failure of an automobile buyer to satisfy the condition of obtaining financing, where the dealer failed to allege or provide evidence that it attempted to obtain proof of income from the buyer or inform the buyer of the dealership's inability to secure financing and assign the finance agreement to a financial institution prior to the due date, and dealer failed to

submit supporting documentation that it was ready and able to return buyer to her original position after failure of financing condition, as evidence indicated that the dealer sold the buyer's trade-in before the end of the period for obtaining financing. The *McClellan* case recognizes that either party can be responsible for the failure of a condition to obtain financing and indicates that a dealer must act in good faith so as not to prevent the buyer's ability to obtain financing.

Jamie Broughton, Orr Nissan's Chief Financial Officer ("Broughton"), was the only witness for Orr Nissan. Broughton testified that the Taylors were placed in a high-risk category for credit; and, despite Orr Nissan having between five and eight lenders available in that risk category, it submitted their credit application only to Regional Acceptance. The Taylors' application was initially approved, but it was later rejected following the income verification process due to Taylor's income as a substitute teacher being seasonal. Broughton testified that no adverse action notification was sent to the Taylors prior to Orr Nissan's cancellation of the contract to sell when Taylor brought the Cruze to the dealership for repairs. She had no knowledge of any facts that would contradict Taylor's testimony that Orr Nissan unilaterally rescinded the contract despite Taylor's wishes to repair the vehicle and proceed with the sale and that Taylor was not afforded an opportunity to put more money down, obtain additional co-buyers, or obtain her own financing. She also had no knowledge whether the Taylors' credit application was submitted to any other lenders following the rejection by Regional Acceptance and prior to Orr Nissan's unilateral cancellation of the contract.

According to the delivery agreement, the financing condition only fails if the credit application is refused by Orr Nissan's finance *sources*, or if the Taylors were unable to secure their own financing within 25 days. Here, Orr Nissan only submitted the Taylors' credit application to *one* source among the five to eight sources available to them in their risk category. In addition, Taylor was not given the opportunity to obtain her own financing prior to Orr Nissan's unilateral cancellation of the agreement.

Here, the financing condition was not fulfilled due to the fault of Orr Nissan. Taylor's credit application was rejected by Regional Acceptance, but Orr Nissan unilaterally cancelled the agreement without attempting to obtain financing from another of its lenders and before allowing the Taylors to secure their own financing within the 25-day timeframe as specified in the delivery agreement. Therefore, according to La. C.C. art. 1772, the financing condition was considered fulfilled and the sale completed.

### Redhibition – Waiver of Warranty

Orr Nissan argues that, regardless of whether there was a completed sale, the Taylors waived any warranties, express or implied, which would include the warranty against redhibition. Orr Nissan notes that the Taylors signed several documents stating that the buyer acknowledges the "as is" sale and waives all warranties, express or implied, including a standard retail installment contract with an "as is" clause, a separate as-is agreement, and a buyers guide. It also claims that the Taylors' purchase of a service contract is evidence of their awareness of the lack of warranty on the vehicle.

La. C.C. art. 2520 provides:

> If the act of sale fails to state that the purchaser waives express and implied warranties, including the warranty of fitness for a

9

particular purpose and the warranty against redhibitory vices, it is not sufficiently clear and the seller remains responsible for implied warranties associated with the concept that the thing be fit for the use for which it is intended.

In order for a waiver of the warranty against redhibition to be effective, it must: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and (3) either be brought to the attention of the buyer or explained to him. *Modicue v. Prince of Peace Auto Sale, LLC*, 54,095 (La. App. 2 Cir. 9/22/21), 328 So. 3d 1239, *writ denied*, 21-01864 (La. 2/15/22), 332 So. 3d 1188; *Prince v. Paretti Pontiac Co.*, 281 So. 2d (La. 1973). The mere fact that a sale is confected "as is" does not create a waiver of all warranties. *Modicue*, *supra*; *Hendricks v. Horseless Carriage, Inc.*, 332 So. 2d 892 (La. App. 2 Cir. 1976). The seller bears the burden of proving the warranty has been waived. *Modicue*, *supra*; *Boos v. Benson-Jeep-Eagle Co.*, 98-1424 (La. App. 4 Cir. 6/24/98), 717 So. 2d 661, *writ denied*, 98-2008 (La. 10/30/98), 728 So. 2d 387.

A review of the record in its entirety indicates some discrepancies throughout the contracts related to the waiver of warranties. First, the clause in the retail installment contract entitled "Buyer's Waiver of Warranties – 'As Is' Sale," provides, in part, as follows:

> ***Unless we*** give you a written warranty or ***enter into a service contract with you within 90 days from the date of this contract***, we make no warranties, express or implied, on the vehicle and you waive all such warranties, including any express or implied warranty of fitness for a specific or ordinary purpose, warranty of merchantability, warranty of fitness for the particular purpose of your intended use, and any warranty that the vehicle is free from hidden, latent or redhibitory defects. You also waive any right that you may have to demand that the sale be canceled (rescinded) or seek a reduction of the Cash Price for the vehicle for breach of any implied warranties. ...

10

> The above waiver of warranties has been read by me and explained to me in a manner that I understand and I knowingly consent to the waivers. (*Emphasis added.*)

At first glance, the clause appears to meet the requirements of a valid waiver of warranty because it expressly refers to the warranties being waived, it is included in the retail installment contract itself, and it is separately acknowledged and signed by the Taylors. However, the clause includes the statement, "unless we … enter into a service contract with [the buyer] within 90 days from the date of this contract." The Taylors purchased a service contract for $2,500 at the time of the vehicle transaction. The clause can be interpreted to mean that the buyer waives all the stated warranties unless they enter into a service contract. It appears that the Taylors negated their waiver of warranties by entering into a service contract, per the language in the agreement provided by and signed off on by Orr Nissan.

In addition, there are also two conflicting buyers guides in the record. The buyers guide serves as a way to indicate certain warranties for the vehicle and includes the applicable provisions:

> ___ IMPLIED WARRANTIES ONLY: The dealer doesn't make any promises to fix things that need repair when you by the vehicle or afterward. *But implied warranties under your state's laws may give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle.*
> ___ DEALER WARRANTY:
>     ___ FULL WARRANTY
>     ___ LIMITED WARRANTY: The dealer will pay __% of the labor and __ % of the parts for the covered systems that fall during the warranty period… *Implied warranties under your state's laws give you additional rights. …*
> ___ SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge…*If you buy a service contract within 90 days of your purchase of this vehicle, implied warranties under your state's laws may give you additional rights.*
> [*Emphasis added.*]

11

The first buyers guide included in the record has the vehicle information completed and is signed by the buyer on the following page, but it has no boxes checked. The second buyers guide also has the vehicle information but no signature page, and it has the "Implied Warranties Only" and "Service Contract" boxes checked. Testimony by Broughton indicates that the blank form was signed by the Taylors prior to determining whether a service contract would be purchased, then when they decided to purchase the service contract, the second buyers guide replaced the first one with the signature page. If the Taylors had not designated any choice at all on the buyers guide form, it could indicate that there were no warranties. However, by choosing *any* of the options – here, the "implied warranty" and "service contract" options – implied warranties under state law would apply, which would include the warranty against redhibition.

The separate "As – Is Agreement" contains language stating that the Taylors are "buying the car in its present condition, with any and all faults, both known and unknown." It further states that Orr Nissan "does not in any way, express or implied, give any warranties, promises, or guarantees to [the Taylors]." There is no express referral to the warranty against redhibition.

All of the above documents were executed in conjunction with one another as part of the transaction to acquire the Cruze. At minimum, the waiver clause in the retail installment contract creates ambiguity as to whether the waiver is valid once the service contract was obtained. The language in the buyers guides that implied warranties under state law may apply contradicts the warranty clause in the retail installment contract,

12

creating further ambiguity. Lastly, the as-is agreement does not include the requisite express language to create a valid waiver of redhibition.

*Redhibition – Damages and Attorney Fees*

As specified in the final judgment and elaborated upon at trial, the Taylors were awarded the following: $5,000 for "reimbursement" associated with the redhibition and conversion claims; $417.70 for rental car expenses; $3,000 for loss of use; $919.21 for expenses of litigation; $7,000 for "embarrassment"; and $9,000 for attorney fees. The amounts were offset by Orr Nissan's payment of $1,144 to the Taylors, which represented the return of the $2,000 deposit and $500 for the value of the trade-in, less a $750 restock fee and a $606 mileage fee (606 miles at $1 per mile). The court stated in its judgment that LUTPA did not apply, but neither the judgment nor the court's reasoning as discussed at trial specified the legal basis for the awards, that is, whether the damages were attributable to either the redhibition or conversion claims.

La. C.C. arts. 2531 and 2545 refer to the kinds and amounts of damages recoverable in redhibition, hinging on whether the seller acted in good or bad faith. La. C.C. art. 2531 refers to a good faith seller, providing, in part, as follows:

> A seller who did not know that the thing he sold had a defect is only bound to repair, remedy, or correct the defect. If he is unable or fails to do so, he is then bound to return the price to the buyer with interest from the time it was paid, and to reimburse him for the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, less the credit to which the seller is entitled if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.

La. C.C. art. 2545 refers to a bad faith seller:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

A successful plaintiff in an action for redhibition may recover reasonable attorney fees incurred in bringing the action if the seller knew or should have known of the defect in the object or thing that was the subject of the sale. *Linoski v. Fleetwood Homes of Texas, #12*, 38,338 (La. App. 2 Cir. 5/12/04), 873 So. 2d 886; *Dailey v. The Home Furnishings Store*, 02-1225 (La. App. 4 Cir. 9/17/03), 857 So. 2d 1051.

Orr Nissan claims that there was no evidence that it had any knowledge of any defects in the vehicle; therefore, it cannot be held liable for attorney fees in redhibition. The Taylors claim the award is consistent with La. C.C. art. 2545 because the trial court specifically found that the vehicle was sold with redhibitory defects and Taylor relied on the representative of Orr Nissan when statements were made to her regarding the suitability and condition of the Cruze.

Evidence pertaining to Orr Nissan's knowledge of the vehicle's condition prior to Taylor's possession included draft and final repair order estimates from the service department, both dated April 14, 2018, and an itemized receipt of the repairs as shown in the final repair order estimate. The draft repair order estimate shows that certain repairs and maintenance were requested and approved, including a used vehicle safety inspection, oil

14

change, one-year state inspection, multi point inspection, mount and balance two tires, and sublet glass repair. It also showed a suggested service of replacing the drive belt because it was fraying and noisy. The final repair order estimate and receipt included the same items as the draft, but did not include the drive belt replacement. There is no information from the service department to show what issues presented with the vehicle when Taylor brought it in for repair. Taylor testified that the windshield rubber came off the windshield as she was driving on the interstate, the check engine light came on and "started burning," and the vehicle acted like it didn't want to switch gears. It is unclear whether the issues Taylor complained of were connected to any repairs or maintenance Orr Nissan did or failed to do pursuant to the repair estimates.

Taylor testified that when she was looking at cars at the dealership, Whitehead told her that the Cruze was a "good car" and that it was better than the one that Taylor had first looked at and test driven that had shown signs of mechanical issues. However, Taylor did not testify that Whitehead made specific assurances regarding the mechanical quality of the vehicle, only that it was better than the first vehicle because it was "fully loaded."

Taylor failed to prove that Orr Nissan knew of any defects prior to the sale or that it made any declaration that the vehicle possessed a quality it did not have. Therefore, Orr Nissan would be considered a "good faith seller" whereby the Taylors are able to recover only the purchase price paid with interest from the time it was paid, reimbursement for the reasonable expenses occasioned by the sale and those incurred for the preservation of the vehicle, less a credit to Orr Nissan for the use of the vehicle while in

15

Taylor's possession. The Taylors are unable to recover other damages or attorney fees pursuant to their redhibition claim.

The Taylors were already repaid the purchase price deposit of $2,500 by Orr Nissan at the time it cancelled the agreement; however, because the contract is being rescinded pursuant to a redhibition action, Orr Nissan is not entitled to the $750.00 restocking fee or the $606.00 mileage reimbursement as provided in the contract. Expenses occasioned by the sale and for preservation of the item would include reimbursement for interest payments, insurance premiums, and any repair costs. *Jones v. Winnebago Indus., Inc.*, 47,137 (La. App. 2 Cir. 5/16/12) 92 So. 3d 1113. The record included two declarations pages for two State Farm automobile insurance policies for the Cruze for the period of May 23, 2018, to July 14, 2018, totaling $342.09. However, the Cruze would have been returned to the dealership approximately two days into the policy period, plus there is no actual invoice showing the premium or any portion thereof was paid. Other sale expenses were included in the financed amount, for which no additional payments were made. The reimbursement of expenses does not include damages for loss of use, which is recoverable only if the seller was in bad faith. Therefore, the Taylors are not allowed reimbursement for a rental vehicle, nor any amount for loss of use.

La. C.C. art. 2531 allows a credit to the seller for use of the vehicle if it was of some value to the buyer. However, the seller must plead entitlement to the credit and bears the burden of proving the value of the use of the defective thing. *Frentress v. Howard*, 31,609 (La. App. 2 Cir. 2/24/99), 728 So. 2d 1019. The record does not support that Orr Nissan

16

affirmatively pled entitlement to the credit, but did charge and collect a mileage reimbursement from the Taylors upon return of the vehicle. Nevertheless, Orr Nissan did not prove any value of Taylor's use of the vehicle other than the mileage. In *Frentress*, this Court reversed the trial court's ruling which granted a mileage reimbursement to the seller in a redhibition claim, because there was no evidence of the value of those miles given that the vehicle was the plaintiff's sole means of transportation and in light of excessive breakdowns and repairs of the vehicle in a relatively short amount of time. *Id.* We find this case to be comparable, in that Orr Nissan failed to prove the value of the miles driven by Taylor while in possession of the vehicle, especially since it almost immediately experienced mechanical issues, causing a safety concern as Taylor was driving on the interstate.

Therefore, the trial court erred in granting awards for loss of use, reimbursement of rental vehicle expense, and any of the $9,000 attorney fee award attributable to the redhibition claim. The only allowable award for the Taylors' redhibition claim would be a return of their total $2,500 deposit and trade-in value. In addition, Orr Nissan must pay to the Taylors a sum of $1,356, representing their wrongful detention of the restocking and mileage fees, plus interest from the time the purchase price was paid by the Taylors.

***Conversion***

La. C.C. art. 526, the source for a conversion claim, provides:

The owner of a thing is entitled to recover it from anyone who possesses or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him.

17

The Louisiana Supreme Court in *Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 98-343 (12/1/98), 721 So. 2d 853, defined conversion as the following:

> A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor, 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

Conversions are of two classes, where possession is originally wrongful, and where possession originally rightful becomes wrongful by wrongful detention. *Cluse v. H & E Equip. Services, Inc.*, 09-574 (La. App. 3 Cir. 3/31/10), 34 So. 2d 959, *writ denied*, 10-0994 (La. 9/17/10), 45 So. 3d 1043. Good faith on the part of the defendant is not a defense to the tort of conversion. *McFadden v. Import One, Inc.*, 10-952 (La. App. 3 Cir. 2/9/11), 56 So. 3d 1212.

Orr Nissan asserts that it sold the trade-in vehicle to the scrap dealer under the mistaken assumption that the contemplated sale would go forward and contends that there is no evidence that it knowingly or unlawfully took possession of the trade-in. The Taylors generally argue that Orr Nissan took possession of the trade-in vehicle and disposed of it, entitling her to damages for conversion.

Taylor traded in her vehicle in connection with the conditional sale entered into with Orr Nissan. The sale was not to be considered complete until financing was approved. Orr Nissan sold the trade-in vehicle prior to the rejection of Taylor's financing and the notification thereof. Although this Court has determined that the condition was ultimately fulfilled by way

of Orr Nissan's actions causing the failure of the condition, Orr Nissan sold the trade-in vehicle prior to the fulfillment and resulting completion of the sale. Therefore, Orr Nissan's possession of the trade-in vehicle was originally rightful, but it became wrongful by wrongful detention, by way of transferring possession without authority, and withholding possession from Taylor when she was still the owner of the vehicle. In addition, Orr Nissan's assertion that it can somehow avoid liability for conversion because its possession of the Cruze was due to a mistaken belief that the sale would be completed is incorrect. Good faith is not a defense to a conversion claim.

### Conversion – Damages

Orr Nissan also claims that, in the event there was a conversion, the proper measure of damages is the fair market value of the vehicle, not some measure of general damages such as "embarrassment" or "reimbursement" totaling $12,000 as was awarded by the court.

The Taylors claim that the general damages for conversion were justified because Taylor lost an operable vehicle, she was humiliated by being escorted to remove her belongings from the Cruze and embarrassed by having the vehicle seized in front of acquaintances, her credit was negatively impacted, and she had stress and anxiety that affected her participation in a master's degree program.

The measure of damages for wrongful conversion is the return of the property, or if it cannot be returned, the value of the property at the time of conversion. *Dual Drilling*, *supra*; *Gibbs v. Harris*, 35,239 (La. App. 2 Cir. 10/31/01), 799 So. 2d 665. Damages for mental anguish and inconvenience arising from the loss of use of property have been allowed in tortious

19

conversion cases. *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756 (La. 1985); *Fenner v. Schley*, 51,842 (La. App. 2 Cir. 3/14/18), 246 So. 3d 770. Whether the lower court, in properly choosing to award damages, does so excessively is merely a quantum assessment that is reviewed on appeal by the *much discretion* standard. *McFadden*, *supra*, *citing Reck v. Stevens*, 373 So. 2d 498 (La. 1979). It is not an appeals court's function to replace the judgment of the trial court with its own; however, if an abuse of discretion is found, it can lower the award to the highest point reasonably within the discretion afforded the trial court. *McFadden*, *supra*; *Coco v. Winston Indus., Inc.*, 341 So. 2d 332 (La. 1976).

In *McFadden*, *supra*, the Third Circuit noted that the trial court had a basis in the record for the conversion award being fixed at the vehicle's value it had at the time it was withheld from the plaintiff, and for loss of use of the vehicle by using the actual cost incurred by the plaintiff in retaining a rental vehicle. It also held that an award of $1,000 for embarrassment and humiliation was not abusively high, when the vehicle was taken by police in front of the plaintiff's coworkers and clients after maliciously being reported stolen by the defendant. Although the court upheld the award because the plaintiff did not raise it as error, it noted that the amount may actually be too low given the circumstances.

In *Quealy*, *supra*, the Louisiana Supreme Court upheld the trial court's award of general damages of $15,000, finding evidence in the record to support a finding that plaintiff suffered mental anguish, humiliation, and inconvenience from the conversion of his stock worth $32,437.50 at trial, plus $15,840 for lost dividends. The dividends constituted his main source

20

of income other than a small disability pension, and he testified that his living conditions were drastically impaired by the loss of these dividends from being physically unable to work and going without the dividend for the six years leading up to trial.

The court awarded the Taylors $5,000 for total reimbursement associated with both the redhibition and conversion claims, $417.70 for rental car expenses, $3,000 for loss of use, and $7,000 for "embarrassment." By offsetting the award by Orr Nissan's payment of $1,144 to the Taylors which included return of an allocated value of $500 for the trade-in vehicle, the court indirectly awarded the Taylors the value of the trade-in vehicle at the time of conversion, or what the court deemed to be the value of the property at the time of conversion. No other special damage is allowable for a conversion claim; therefore, the trial court erred in awarding the Taylors $5,000 for reimbursement as to their conversion claim.

General damages for conversion of Taylor's trade in would include loss of use as well as mental anguish, humiliation, and inconvenience. Taylor testified that she used a rental vehicle for several weeks, although only a receipt of $417.70 for one week was submitted. The lower court awarded damages for this amount *plus* an additional, seemingly arbitrary amount of $3,000 for loss of use. An award for any more than reasonable rental expenses for the period in which Taylor testified she used the rental vehicle would be impermissibly duplicative and excessive. Therefore, we find that an award for loss of use consisting of $417.70 for one week of rental expense, plus the expenses for the two remaining weeks of rental expense as supported by Taylor's testimony at an average of $400 per week,

21

a total of $1,217.70, is reasonable. The trial court was in the best position to determine the basis for general damages, including mental anguish, and found the circumstances justified a damage amount of $7,000 for embarrassment. We find that the lower court did not abuse its discretion in awarding $7,000 for embarrassment given the facts of this case.

Attorney fees are not allowed in Louisiana except where authorized by statute or contract. *Quealy*, *supra*. An award of an attorney fee is improper in a conversion case. *Aldredge v. Moses*, 595 So. 2d 379 (La. App. 3 Cir. 1992); *Ortego v. Ortego*, 471 So. 2d 1106 (La. App. 3 Cir. 1985). In *Fenner*, *supra*, this Court found that the trial court did not err in failing to award attorney fees and expert witness fees, noting that there was no statutory provision that mandates recovery of attorney fees for a tort lawsuit for conversion. This Court also found that trial court properly denied a buyer's request for attorney fees in an action in which the buyer of a pickup truck alleged that the seller wrongfully repossessed the truck, even though the buyer prevailed on his claim that wrongful repossession amounted to tortious conversion. *Lee v. Lewis*, 339 So. 2d 513 (La. App. 2 Cir. 1976).

Therefore, any award of attorney fees in connection with the Taylor's conversion claim is error.

### Louisiana Unfair Trade Practices Act

La. R.S. 51:1405 of LUTPA states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. R.S. 51:1409 of LUTPA provides a remedy for violations:

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use

22

or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.

LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 09-1633 (La. 4/23/10), 35 So. 3d 1053. A violation of LUTPA is found when there is a clear deceptive or coercive behavior on the part of the defendants when engaging in trade. *Walker v. Hixson Autoplex of Monroe, L.L.C.*, 51,758 (La. App. 2 Cir. 11/29/17), 245 So. 3d 1088. In order to recover under LUTPA, a plaintiff must prove some element of fraud, misrepresentation, deception, or unethical conduct by defendant. *Dufau v. Creole Engineering, Inc.*, 465 So. 2d 752 (La. App. 5 Cir. 1985), *writ denied*, 468 So. 2d 1207 (La. 1985). The Louisiana Supreme Court noted in *Cheramie*, *supra*, that the courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct "offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Citing Moore v. Goodyear Tire & Rubber Co.*, 364 So. 2d 630, 633 (La. App. 2 Cir. 1978).

23

It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition. *Cheramie*, *supra*. Whether a defendant has violated LUTPA is a factual determination. *Walker*, *supra*; *Cupp Drug Store, Inc. v. Blue Cross & Blue Shield of La., Inc.*, 49,482 (La. App. 2 Cir. 1/7/15), 161 So. 3d 860, *writ denied*, 15-0571 (La. 5/22/15), 171 So. 3d 249. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Walker*, *supra*; *Cupp Drug*, *supra*.

Orr Nissan argued at trial that LUTPA did not apply and damages or attorney fees under the Act were not appropriate, because it did not knowingly engage in or continue with any kind of unfair practice *after being put on notice* by the Attorney General in response to a customer complaint. The trial court found that LUTPA did not apply, stating that it agreed with Orr Nissan's argument, but it did not elaborate further on its reasoning.

Although the trial court failed to provide insight as to its finding that LUTPA was inapplicable in this case, we interpret the finding to be a determination that the circumstances surrounding the cancellation of the contract, including the conversion of the trade-in vehicle, did not rise to the level of a LUTPA violation. However, the trial court's finding that a conversion took place and Taylor suffered mental anguish to the extent damages for embarrassment in the amount of $7,000, clearly support a finding of a LUTPA violation. Therefore, we find the trial court's ruling to be clearly wrong and manifestly erroneous.

First, the Taylors suffered an ascertainable loss both in Orr Nissan's wrongful detention of a portion of her deposit made on the Cruze and the

24

conversion of Taylor's trade-in vehicle. Second, the record supports that Taylor's loss was a result of Orr Nissan's knowingly unfair and deceptive acts. Upon informing Orr Nissan of the issues with the Cruze, Taylor was instructed to bring the vehicle to the dealership. She waited several hours with the understanding that her vehicle was being repaired by the service department. It was only after she was informed that the repairs were not covered by warranty that Curley informed her that her financing had not been approved and they would be cancelling the agreement. Taylor was never informed of the credit application rejection prior to coming to the dealership for the repairs. Orr Nissan did not attempt to pursue financing through other lenders or obtain a larger deposit or other cosignors, nor was Taylor given the opportunity to secure financing on her own within the 25-day period allowed by the contract. It was only after the dealership was put in a situation where it was expected to absorb the costs of the Cruze repairs, that it refused to follow through with its contractual obligations.

Following the unilateral cancellation, Taylor was instructed to immediately return the Cruze key, remove her belongings from the vehicle while being supervised, place them in trash bags, and then was escorted outside the building to wait for someone to pick her up since Orr Nissan had already sold Taylor's trade-in. Orr Nissan breached its contract in regard to its financing obligations, converted Taylor's property, then humiliated her in front of other employees of the dealership, customers, and acquaintances. Because she abruptly had no transportation, she missed classes in her masters program and was forced to appeal to her program director and disclose an embarrassing personal situation. Her credit was negatively

25

impacted following the transaction. She suffered extreme inconvenience from the loss of a vehicle as well as mental anguish.

In *McFadden*, *supra*, the plaintiff wanted to return the car after finding out her financing had not gone through and she did not agree to the new terms, but the dealership refused and threatened that if she did not agree to the new terms, they would report the car stolen. They also refused to return her trade-in vehicle. The dealership falsely reported the car as stolen, the car was repossessed at her place of employment, and the dealership continued to refuse the return of the trade-in vehicle. The Third Circuit affirmed the trial court's judgment in favor of plaintiff and found the conduct not only was a violation of LUTPA but warranted treble damages under the provision.

In *Jeter v. M & M Dodge, Inc.*, 93-908 (La. App. 3 Cir. 3/2/94), 634 So. 2d 1383, a vehicle that was sold to the plaintiff had sustained damage to the hood while being transported from manufacturer to dealership. It was repaired and repainted with the knowledge of the dealership. After the car was sold to the plaintiff, he noticed defects in the paint job. The dealership told the plaintiff it was a result of a substance applied to the vehicle prior to transport or due to acid rain. Plaintiff later discovered the true reason for the defect from a collision center that did an inspection of the car, at which time the dealership acknowledged the repair work done to the hood prior to sale. The Third Circuit affirmed the trial court's judgment that the dealership was in bad faith and committed an unfair trade practice.

We find that LUTPA is not only applicable to this case, but that Orr Nissan is in violation thereof due to its unethical, oppressive, and

26

unscrupulous methods involved in unilaterally cancelling the sale contract and wrongfully converting Taylor's trade-in vehicle. Taylor is entitled to recover actual damages, as well as attorney fees incurred in connection with the claim. Damages for return of purchase price paid and loss of use are awarded in connection with the redhibition and conversion claims, respectively; therefore, only attorney fees and expenses would be permissible under the Taylors' LUTPA claim. The trial court awarded $9,919.21 for attorney fees and expenses in connection with the Taylors' claims, but it did not allocate the amount of fees incurred in connection with each claim. However, since all claims arose as part of the same transaction and are so interconnected, it is reasonable to infer that the same amount of time and litigation expenses would be spent in connection with solely the LUTPA claim. Therefore, we uphold the trial court's award of $9,000 in attorney fees as allowable under La. R.S. 51:1409 of LUTPA.

## CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's judgment on the merits in favor of Taylor's redhibition and conversion claims, but we REVERSE the trial court's judgment as to the LUTPA claim and find in favor of the Taylors that a violation occurred. We AMEND the trial court's judgment as to damages and award the following:

> Redhibition: $2,500 for return of purchase price paid, plus interest from the time of purchase price paid on the sum of unpaid amount of $1,356;

> Conversion: $1,217.70 for loss of use; $7,000 in general damages for mental anguish; and

> LUTPA: $9,919.21 for attorney fees and litigation expenses, plus interest.

27

All costs of this proceeding are to be split 50% to Plaintiff, 50% to Defendants.

**AFFIRMED IN PART, REVERSED IN PART; AMENDED as to damages.**